BULLOCK et al. v. CUTTING.

(Supreme Court, Appellate Division, Third Department. March 5, 1913.)

1. LANDLORD AND TENANT (§ 92*)—LEASES—COVENANTS—CONSIDERATION.

An agreement in a lease, giving the owners the right to sell and the lessee first option to purchase, is a binding covenant, being supported by the consideration for the lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 290–294; Dec. Dig. § 92.*]

2. LANDLORD AND TENANT (§ 92*)—OPTION OF PURCHASE—ACCEPTANCE.

A tenant's rights under an option to purchase were not prejudiced by an acceptance of the lessor's offer in the alternative, where the lessors made no objection to the form of acceptance.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 290–294; Dec. Dig. § 92.*]

3. LANDLORD AND TENANT (§ 92*)—OPTION OF PURCHASE—ACCEPTANCE.

As no particular words are necessary to an acceptance, a letter by a lessee, though preceded by one which accepted in the alternative the lessor's proposal to sell the demised premises, creates a binding contract

of purchase under the lessee's option, where it stated that the lessee would at a fixed time pay in cash the purchase price.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 290–294; Dec. Dig. § 92.*]

4. LANDLORD AND TENANT (§ 92*)—OPTION TO PURCHASE—TENDER BY PURCHASER—NECESSITY.

Where a lessee accepted the lessor's proposal to sell the demised premises under an option contained in the lease, agreeing to pay cash in accordance with the lessor's demand, no tender of the purchase price is necessary to preserve his rights, where the lessor, before time for consummation, repudiated the sale.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 290–294; Dec. Dig. § 92.*]

Appeal from Delaware County Court.

Action by Kathryn Bullock and others against Lester J. Cutting. From a judgment for plaintiffs, defendant appeals. Reversed.

Argued before SMITH, P. J., and KELLOGG, LYON, and HOWARD, JJ.

Herbert C. Kibbe, of Sidney, for appellant.

E. D. Cumming, of Deposit, for respondents.

PER CURIAM. The defendant, by a lease in writing, signed by himself and the duly authorized agent of the plaintiffs, leased a certain mill property owned by them for the period of one year from the 15th day of March, 1911, at a monthly rental; the privilege being granted to him of renewing the lease for another year on the same terms. The lease also contained the further provision:

"Parties of the first part [plaintiffs] reserve the right to sell said property at any time during this term, providing, however, that the party of the second part [defendant] may have the first option of buying at the price which first parties desire to sell at, if so desired. If the second party does not desire to avail himself of the right to purchase said premises in case a sale is made, then he agrees to vacate the same on thirty days' notice upon a bona fide sale of said property."

The lease contained further covenants that the defendant would keep the property in repair and not allow the mill to stand idle. The defendant went into occupation, and confessedly was performing all covenants on his part, when, on the 15th day of November, 1911, plaintiffs caused to be served upon him, by mail, the following notice:

"You will please take notice that we have an opportunity of making a bona fide sale of the property at Masonville, N. Y., rented by you of us, and have signed papers to that effect, at $3,000. If you desire to avail yourself of the option contained in the lease, by purchasing, please do so at once as we do not want to lose this chance of making the sale. The sale is to be cash. This notice is intended to give you the thirty days provided for by the lease."

The defendant, for some reason, had obtained permission for his father to run the mill, and the notice was addressed to him as well as the defendant himself. On the 17th the father wrote to the plaintiffs' agent, concerning whose authority there is no question, acknowledging the receipt of the notice, and saying that he had no other intention

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

than to buy the mill if it could be bought for that price, and that he was only too well pleased to take it, and that he would furnish the cash for the same within 30 days. On the 21st of November the defendant himself wrote the agent as follows:

"Received your letter and notice. In reply would say I will pay the $3,000 cash or vacate the mill before December 15th, 1911. * * * I will get your money or give up possession all right so the estate will not lose the sale of it."

No reply was made to either one of these communications, and on November 25, 1911, which occurred on Saturday, the defendant wrote the agent as follows:

"I will be at your office any day after Monday, November 27th, with cash for the deed of the mill property, as per lease. Please notify the heirs and name the day. Also is the mortgage paid or do I have to buy subject to the mortgage? Please let me know by return mail."

These plaintiffs were referred to as the heirs, and it is conceded that they lived in the state of Pennsylvania, and not in the vicinity of the residence of either the agent or the defendant. All of these various communications were signed by the several parties. Immediately on receipt of the letter of the defendant of November 25th the agent of the plaintiffs wrote to the defendant, saying that conditions had changed, and that the prices of the mill property had risen, and that he had a still better offer, and that negotiations would have to be called off, and that the defendant should consider the correspondence closed, and that he had written the plaintiffs with respect to the raise in price, and that he was leaving town for a week or 10 days, and hence would know nothing further about it until his return. On December 9th the agent wrote the defendant that he had received an offer of $3,500, asking the defendant if he would care to take it at that figure. The defendant paid no attention to this latter offer or notice, standing upon his rights under his former acceptance. On the 17th day of January following plaintiffs instituted these proceedings to oust the defendant from the premises, on the ground that he was a tenant holding over beyond his term. The defendant interposed an answer, alleging that he was not in default, and was not holding over, but had exercised the option given him by the lease to purchase the property, and was in possession under contract of purchase. The proceedings resulted in an order of dispossession, and the defendant appeals.

[1] We think the order and judgment of dispossession was erroneous, and should be reversed. The provisions of the lease, giving to the owners the right to sell the property at any time during its term, and the agreement of the tenant to vacate upon 30 days' notice, if the same should be sold to a bona fide purchaser, as well as the stipulation that the defendant could have the first privilege of buying at the price which the owners were willing to sell to a stranger, were material and substantive provisions of the lease. A consideration for them is found, not only in such consideration as there was for the lease itself, but in mutual promises and agreements. The granting of a privilege in a written lease to renew the same or to purchase the property leased is a covenant, and is binding as such. Kolasky v. Michels, 120 N. Y.

635, 24 N. E. 278; Tracy v. Albany Exchange Co., 7 N. Y. 472, 57 Am. Dec. 538; Carney v. Pendleton, 139 App. Div. 152, 123 N. Y. Supp. 738; Western N. Y. & Penn. R. R. Co. v. Rea, 83 App. Div. 576, 81 N. Y. Supp. 1093; Crawford v. Kastner, 26 Hun, 440; Hayes v. O'Brien, 149 Ill. 403, 37 N. E. 73, 23 L. R. A. 555; McCormick v. Stephany, 61 N. J. Eq. 208, 48 Atl. 25; Frank v. Stratford-Handcock, 13 Wyo. 37, 77 Pac. 134, 67 L. R. A. 571,. 110 Am. St. Rep. 963.

[2, 3] The plaintiffs recognized their obligation under the lease by giving the defendant notice that they were willing to sell the property for the sum of $3,000, and that they had found a bona fide purchaser who would pay that amount, and notified the defendant that if he desired to avail himself "of the option contained in the lease" he could do so and purchase the property at that price. After the receipt of this notice, all that remained for the defendant to do, in order to make a binding contract of purchase, was to notify the plaintiffs that he availed himself of the option and privilege of purchasing and hold himself in readiness to pay therefor. This, we think, he did. Although the notice was mailed to the defendant on the 15th of November, and he did not unequivocally accept the proposition until the 25th of that month, no objection was made on account of delay; nor was any objection made to the letter of defendant written on the 21st, because it was in the alternative, to the effect that he would either pay the cash and take the property or vacate within the 30 days. The plaintiffs recognized the father of the defendant as having some connection with the contract, because the notice was directed to him as well as to the defendant; and the father, and on the 17th of November, wrote an unequivocal acceptance, and that he was glad of the opportunity of so doing. Eliminating, however, the letter of the father and the alternative acceptance of the defendant, the letter of the defendant of November 25th was an unequivocal acceptance of the offer, and was so understood by the plaintiffs' agent. No particular words are necessary to constitute an acceptance, and the letter is an unequivocal statement that the defendant elected to purchase the property in pursuance of the terms of the lease. The defendant having accepted, and the plaintiffs, through their authorized agent, having received the acceptance, the contract for purchase became complete; and the plaintiffs could neither withdraw the option nor change the price to be paid. Pierson v. Morch, 82 N. Y. 503; Baker v. Packard, 112 App. Div. 543, 98 N. Y. Supp. 804; affirmed 189 N. Y. 524, 82 N. E. 1124; Stillwell v. Ocean Steamship Co., 5 App. Div. 212, 39 N. Y. Supp. 131; King v. Raab, 123 Iowa, 632, 99 N. W. 306; Perkins v. Hadsell, 50 Ill. 216; 24 Cyc. 1023.

[4] It is true that the defendant was required to pay the purchase price in cash, and it is claimed that his failure to tender the amount and demand a deed forfeited whatever rights he may have acquired by the acceptance of his option to purchase. No objection on this ground was made by the plaintiffs at the time they attempted to withdraw the option, and even if such objection had been made it would have been unavailing. The defendant had a reasonable time within

which to comply with the terms of the contract (Fitzpatrick v. Woodruff, 96 N. Y. 561), and two or three days, one of which was Sunday, could not be deemed to be unreasonable, especially in view of the fact that the grantors, who must give the deed, were residents of another state. When the plaintiffs absolutely refused, as they did, to recognize his rights and repudiated the contract, the defendant was under no obligation to make any further tender or demand, or to keep the tender good.

Plaintiffs urge that in prior conversations had with the defendant he said he could not and did not desire to purchase; and that he thereby misled them and estopped himself from exercising his option. It is a sufficient answer to this position to say that the plaintiffs were not misled by what the defendant may have said; and that they thereafter recognized his right to exercise the option and gave him notice so to do. Their notice and subsequent raise in price show that the contract they made with another purchaser was made subordinate to the defendant's right to exercise his option.

Our conclusion is that the agreement of the plaintiffs to sell the property to the defendant for such price as they were willing to take from a bona fide outside purchaser was a valid one, and that the defendant accepted the offer in such manner as to make a binding contract of sale, and that when the present summary proceedings were instituted against him he was a purchaser in possession, against whom the plaintiffs had no right to proceed as against a tenant holding over.

The only possible doubt concerning this proposition is a discussion concerning the lack of enforceability of unilateral contracts in Levin v. Dietz, 194 N. Y. 376, 87 N. E. 454, 20 L. R. A. (N. S.) 251. In that case the alleged contract was not even an option, but was rather an expression of desire or intention to sell real property. The alleged contract was sought to be specifically performed, and that relief was denied. None of the cases discussed in the opinion relate to rights or privileges of renewals, or to purchase the leased property; and neither Kolasky v. Michels, supra, and Tracy v. Albany Exchange Co., supra, holding such privileges or options of renewal in a lease to be a covenant, nor Probst v. Rochester Steam Laundry Co., 171 N. Y. 584, 64 N. E. 504, Long v. Stafford, 103 N. Y. 274, 8 N. E. 522, Martin v. Babcock & Wilcox Co., 186 N. Y. 451, 79 N. E. 726, all of which recognize the validity of such options, although not expressly denominating them as covenants, were in any wise referred to or disapproved.

The option of renewal or of purchase in a lease, signed by both parties, often involving vast sums of money, and being an inducement on the part of the lessee to pay a greater rent, or to make larger expenditures for the care of the leased property, is quite a different matter from an ordinary option, signed by the owner alone, giving another the privilege of purchasing at a fixed price within a definite time.

We agree in the conclusion of the Second Department in Carney v. Pendleton, 139 App. Div. 152, 123 N. Y. Supp. 738, that the Court of Appeals could not have intended to hold, in Levin v. Dietz, that such contracts were unilateral and incapable of enforcement.

We think the defendant became a purchaser in possession upon his acceptance of the option to purchase, and that the summary proceedings were wrongfully instituted against him; and under the lease he had a right of occupancy for another year, which term has not yet expired.

. The final order should be reversed, with costs, and proceedings dismissed, with costs, with leave to appellant to apply to this court for restitution, if he be so advised. The particular finding of fact of which we disapprove being that defendant was a tenant of plaintiff holding over after the expiration of his term.