■ MT. READ TERMINAL, INC., Respondent, v LECHASE CONSTRUCTION CORP., Appellant and P. CAMELIO, INC., Respondent.—Order unanimously reversed, and defendant's motion granted, in accordance with the following memorandum: In 1971 plaintiff contracted for the erection of a building on its property in Rochester. Several disputes developed, specifically between plaintiff, defendant LeChase and defendants D.I. Development Corp. and Design International. When the building was close to completion, LeChase walked off the job and on December 23, 1971 it filed a mechanic's lien demanding approximately $55,000 allegedly due under the contract. When payment was not forthcoming, it commenced a foreclosure action on April

21, 1972. Plaintiff and defendant D.I. Development Corp. answered, asserting general denials, counterclaims against LeChase totalling over $150,000 and cross claims against other involved parties. Specifically, both plaintiff and D.I. Development Corp. alleged counterclaims against LeChase for $50,000 damages resulting from negligent construction of the roof of the building. After extended negotiations, the foreclosure action was settled with the payment by plaintiff of $22,750 to LeChase and D.I. Development Corp. and $2,500 to D.I. Development Corp. On October 26, 1972 the parties exchanged mutual releases. The release from plaintiff to LeChase, prepared by plaintiff's attorney, was general but stated "more particularly" that the release was in settlement of the mechanic's lien and the foreclosure action. It specifically excepted from the terms of the release LeChase's five-year guarantee of the concrete floor. While the negotiations for this settlement were proceeding, the roof of the building collapsed on January 25, 1972, some 10 months prior to the date of the release to LeChase. The damage resulting from the collapse of the roof, alleged to be $16,289.94 are the subject of action No. 2. On March 7, 1973 the roof was damaged again by wind. The loss alleged in the amount of $4077.93 is the subject of action No. 1. The complaints in the two actions allege negligence and breach of express and implied warranties. The first action was commenced on August 7, 1973 and the second action was commenced on November 3, 1973. LeChase submitted answers containing general denials. When the actions appeared on the tentative calendar and were reached for pretrial in March, 1975, LeChase stated its intention to move to amend its answer to allege the defense of release. A motion was made returnable at Special Term and was referred to Trial Term for a decision on the merits of the release defense. Trial Term held that plaintiff's actions were not barred by the release of October 26, 1972 and denied the motion to amend. Since it ruled on the merits of the proffered defense, it did not consider whether the motion was timely. This appeal followed. Releases are contractual in nature, and whether a release is general, barring any and all claims against the party released, depends upon the intention of the parties (*Murphy v City of New York,* 190 NY 413). When the words of the release are of general effect the release is to be construed most strongly against the releasor (*Kirchner v New Home Sewing Mach. Co.,* 135 NY 182; *Murphy v City of New York, supra*) and the burden rests upon the releasor to establish that general language of the release was not meant to be general. The fact that the release contains a clause setting forth a specific recital is not dispositive of the construction to be given the instrument (*Mangini v McClurg,* 24 NY2d 556, 562-563). It might well be argued that plaintiff's release specifically released LeChase for any claims involving the roof construction. The "more particularly" clause stated that plaintiff released its claims against LeChase arising out of LeChase's mechanic's lien and the action to foreclose it. Of course, plaintiff had no claims in the foreclosure action except those which it asserted by way of counterclaims, one of which expressly sought damages for LeChase's negligent construction of the roof. In any event, we find that the release was broad enough and intended by the parties to bar any claims plaintiff had against LeChase arising out of the construction of the plaintiff's building, except claims preserved by the five-year floor guarantee. The release was part of a general settlement arrived at by the parties after several months of negotiation. The settlement included payment of a reduced sum to satisfy LeChase's claims and was accompanied by the exchange of mutual releases. Representatives of both LeChase and D.I. Development Corp. testified that it was their intention that the settlement would

end a bad job, that it was intended to end the dispute. The only reservation of liability for faulty construction against LeChase was the five-year guarantee on the concrete floor, and this is particularly significant since plaintiff's president admitted that he was aware that under the terms of the contract plaintiff was entitled to a guarantee of all the work for one year. The release may be asserted as a defense to all claims arising from the construction, not only the damage occasioned by the roof collapse prior to execution of the release, but also the roof damage after the execution even though no litigation had yet been started *(Lucio v Curran, 2 NY2d 157, 161-162; Kirchner v New Home Sewing Mach. Co., supra)*. Plaintiff urges that the amendment must fail on the merits under our ruling in *Scavone v Kings Craft Corp.* (55 AD2d 807). In *Scavone* we held that a subrogated insurer's rights to recover from a wrongdoer may not be defeated by a release to the wrongdoer granted by the insured subsequent to recovering payment provided the wrongdoer had notice of the subrogated claim. The nominal plaintiff in this action has been reimbursed for its losses by its own insurance company and the insurer claims the benefit of the *Scavone* rule. That claim presents issues of fact for the trial, however, and does not prevent this amendment to LeChase's answer. Finally, plaintiff urges that the application to amend the answer was not timely. Although LeChase had knowledge of the release from the inception of the actions, it served answers containing only general denials and waited until all the pretrial proceedings were completed and the case had reached the tentative calendar before advising plaintiff of its intention to amend the answer. Nevertheless, we find no prejudice to plaintiff arising from this delay other than the additional delay and cost which may be occasioned by further pretrial proceedings occasioned by the new defense. Accordingly, the motion to amend is granted upon condition that the proposed amended answer be served upon the other parties to this action and that LeChase pay $500 costs to plaintiff's attorney, both to be done within 20 days of the order herein (see *Mirabella v Banco Ind. de La Republica Argentina,* 34 AD2d 630). (Appeal from order of Monroe Supreme Court—amend answer.) Present—Simons, J. P., Dillon, Hancock, Denman and Goldman, JJ.